MAINE SUPREME JUDICIAL COURT                                   Reporter of Decisions
Decision:     2016 ME 20
Docket:       Was-15-6
Argued:       November 4, 2015
Decided:      January 26, 2016

Panel:        SAUFLEY, C.J., and MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

PHYLLIS BRADBURY et al.

v.

CITY OF EASTPORT et al.

PER CURIAM

[¶1] In this appeal, we are asked to consider whether the City of Eastport's sale of seventeen acres of publicly owned oceanfront property was "advertised" within the meaning of the Eastport City Charter then in effect. *See* Eastport, Me., City Charter art. III, § 3.04(12) (attested by City Clerk Oct. 17, 2011). Phyllis Bradbury and David Gholson appeal from a final judgment entered on motions for summary judgment in the Superior Court (Washington County, *R. Murray, J.*) declining to provide declaratory or equitable relief that would prevent the sale of City property to First Perry Realty, LLC, and CPM Constructors.

[¶2] Assuming that the complaint can be construed to seek rescission of the agreements entered into by the City Manager, and therefore that it continues to state a claim upon which relief can be granted, we conclude that the record presented on summary judgment demonstrates that the actions taken by the City

2

Council sufficiently "advertised" the sale within the meaning of the Eastport City Charter then in effect. *See* Eastport, Me., City Charter art. III, § 3.04(12); *see also McGettigan v. Town of Freeport*, 2012 ME 28, ¶ 13, 39 A.3d 48. We therefore affirm the judgment of the Superior Court.

## I. SALE PROCESS

[¶3] As it existed at the time of the sale at issue here, the City Charter authorized the City Manager to "conduct all sales of property belonging to the City which is unfit or unnecessary for the City's use but only after such sale has been authorized and *advertised* by the City Council."[1] Eastport, Me., City Charter art. III, § 3.04(12) (emphasis added). The summary judgment record demonstrates that the City learned late in 2010 that Husson University would no longer lease the oceanfront property to operate a boat school program after the 2011-2012 school year. During the first half of 2011, the City entered into negotiations with Marlow Yachts to sell Marlow the seventeen acres, plus an additional twenty-three acres of city-owned property, for $850,000. In July 2011, however, Marlow informed the City that it was no longer interested in purchasing the property. All of this information was publicized in articles in Boston, Portland, Bangor, and local

---

[1] The Charter appears to have been amended in 2014 with respect to the sale of city-owned property. *See* Eastport, Me., Notice of April 9, 2014, Public Hearing (listing proposed amendments to the City Charter); Eastport, Me., Results of the Special Municipal Election of June 10, 2014 (attested by City Clerk June 11, 2014). The parties have not supplemented the record with an amended Charter.

newspapers, as well as in trade, yachting, and specialty publications. Thus, the summary judgment record demonstrates that the public was made aware of the nature and location of the property, and of the City's plan to sell it, by the summer of 2011.

[¶4] On August 10, 2011, at a regular meeting of the City Council attended by the public, Friends of the Boat School Marine Trades Development Corporation[2] offered to purchase the property for a nominal amount of money and continue the boatbuilding and school operations. After providing notice for public attendance, the City Council held a workshop at which Friends of the Boat School reiterated its offer, and Perry Marine and Construction, LLC, offered to purchase the property for $300,000. The City made no decision but encouraged Friends of the Boat School and Perry Marine to discuss possibly working together on an agreement.

[¶5] On September 1, 2011, after again providing proper notice for public attendance, the City Council held a special council meeting. Perry Marine and Friends of the Boat School presented a proposal for affiliates of Perry Marine—First Perry Realty, LLC, and CPM Constructors—to purchase the property for $300,000; to give approximately one half of the property to Friends of the Boat

---

[2] The party named in the complaint is Friends of the Boat School Marine *Services* Development Corp., but the name of the entity, as expressed in the statements of material facts and the pertinent contract and deed, is Friends of the Boat School Marine *Trades* Development Corp.

School; to give other, separate land to the City to relocate public access to the ocean; and to donate $75,000 to the City to develop the new public access. At the end of the meeting, after lengthy public comment, the City Council voted to accept the offer to purchase. The City Council authorized the City Manager to execute a purchase and sale agreement, and later voted to authorize the City Manager to execute the necessary documents to sell the property to First Perry and CPM. On November 17 and 20, 2011, as required by the Charter, the City had notices of the sale placed in the *Bangor Daily News*. *See* Eastport, Me., City Charter art. III, § 3.04(12) (authorizing the City Manager to effectuate a sale of City property "only after such sale has been authorized and advertised by the City Council"). The City then conveyed the property to First Perry on December 1, 2011.

## II. LEGAL DISCUSSION

[¶6] The term "advertise" was not defined in the City Charter. We construe the term based on its ordinary meaning unless to do so would be illogical or nonsensical. *McGettigan*, 2012 ME 28, ¶ 13, 39 A.3d 48. The ordinary definition of "advertise" is, in relevant part, as follows:

> to make known to (someone) **:** give notice to **:** INFORM, NOTIFY . . . to make generally known **:** call attention to **:** give notice of . . . to give publicity to . . . to give public notice of **:** announce publicly esp. by a printed notice or through a radio or television broadcast . . . to call public attention to esp. by emphasizing desirable qualities so as to arouse a desire to buy or patronize . . . .

*Webster's Third New Int'l Dictionary of the English Language Unabridged* 31 (2002). Because the City conducted its dealings openly at public meetings and in the media, resulting in both publicity and public participation, the City's actions were sufficient to avoid a circumstance in which the City Manager effectuated a sale of City property without the input or involvement of the public. Based on the ordinary meaning of "advertise," as generally providing notice, *see McGettigan*, 2012 ME 28, ¶ 13, 39 A.3d 48, and taking into account that the Charter must be liberally construed in favor of the City, *see* Eastport, Me., City Charter art. I, § 1.02, we conclude that the record on summary judgment establishes that the City Council took adequate measures to publicly advertise both its authorization of the City Manager to execute documents and the sale of the property itself.

The entry is:

Judgment affirmed.

---

**On the briefs:**

Kristin M. Collins, Esq., Kelly & Collins, LLC, Belfast, for appellants Phyllis Bradbury and David Gholson

Paul M. Koziell, Esq., Julia G. Pitney, Esq., and Michael T. Devine, Esq., Drummond & Drummond, LLP, Portland, for appellees First Perry Realty, LLC, and CPM Constructors

Dennis L. Mahar, Esq., Fletcher, Mahar & Clark, Calais, for appellees City of Eastport et al.

**At oral argument:**

Kristin M. Collins, Esq., for appellants Phyllis Bradbury and David Gholson

Paul M. Koziell, Esq., for appellees First Perry Realty, LLC, and CPM Constructors

Dennis L. Mahar, Esq., for appellees City of Eastport et al.

Washington County Superior Court docket number CV-2011-39
FOR CLERK REFERENCE ONLY